United States Court of Appeals,

Fifth Circuit.

No. 94-20690.

TEXAS MEDICAL ASSOCIATION, et al., Plaintiffs-Appellants,

v.

AETNA LIFE INSURANCE COMPANY, et al., Defendants-Appellees.

April 11, 1996.

Appeal from the United States District Court for the Southern District of Texas.

Before KING, DAVIS and SMITH, Circuit Judges.

KING, Circuit Judge:

The Texas Medical Association, the Harris County Medical Society, and five individual doctors brought suit against Aetna Life Insurance Co. and other affiliated companies challenging the doctors' deselection from Aetna's preferred provider organization. The district court granted summary judgment in favor of Aetna on the grounds that Texas law does not provide a private cause of action to enforce Texas administrative regulations governing preferred provider health insurance plans. We affirm.

## I. BACKGROUND

### A. FACTS

On November 24, 1993, the Texas Medical Association ("TMA"), the Harris County Medical Society ("HCMS"), and Drs. Peter Benjamin, Robert Maidenberg, Reginald T. Chelvam, Harold J. Fields, and Jesus R. Portela (the "doctors") (collectively, the "appellants") sued Aetna Life Insurance Co. ("Aetna Life Insurance"), Aetna Health Plans of Texas, Inc. d/b/a Partners

National Health Plan ("Aetna Health Plans"), and Aetna Health Management ("Aetna Health Management"). The suit arose out of the following facts:

The appellants are five physicians who practice medicine in Houston, Texas—Benjamin, Maidenberg, Chelvam, Fields, and Portela—and two physicians' associations—TMA and HCMS.[1] Aetna Life Insurance is a commercial insurance carrier that sells, among other insurance products, preferred provider plans—group health insurance policies that provide a higher level of insurance coverage to the insured if the insured obtains health care services from a preferred provider. Policyholders in preferred provider plans are free to choose doctors who are not preferred providers, but they will receive a lower level of benefits if they do so. To establish a network of preferred providers, commercial insurers such as Aetna contract with selected physicians, hospitals, and other providers, creating a preferred provider organization ("PPO"). Aetna Health Management provides services to Aetna Life Insurance's Houston area PPO. The doctors were members of Aetna's PPO.

On September 1, 1993, Aetna notified each of the doctors in writing that his participation in the PPO would be terminated in ninety days, effective December 31, 1993. The preferred provider contracts between the doctors and Aetna provided that, upon ninety

---

[1]Aetna argues that TMA and HCMS lack standing to maintain this suit. Although standing is ordinarily a threshold issue, because we affirm the district court's summary judgment on the ground that the doctors cannot maintain a private cause of action to enforce the PPO rules, it is unnecessary for us to address the organizational standing of TMA and HCMS.

2

days' written notice, either party could terminate the agreement at any time without cause (the "termination without cause" provision). In November 1993, Aetna provided additional information to the doctors by letter regarding the criteria used in the evaluation and the reasons for their deselection.

Aetna further advised the doctors in the November letters that, upon their request, they would be entitled to review of the deselection decision. Aetna provides deselected doctors with two levels of review as a matter of corporate policy. First, a doctor complaining about deselection can meet with the network manager and medical director. If the problem is not resolved at this meeting, the doctor can have his deselection reviewed by the chief executive officer of the PPO, who relies on advice from an advisory panel of doctors.

Of the five doctors bringing this action, only Dr. Benjamin participated in the first level of Aetna's offered review process. Aetna decided to uphold Dr. Benjamin's deselection. Following this first level review, Aetna advised all five doctors that an advisory panel review was scheduled for November 30, 1993. The doctors refused to participate in the advisory panel review because Aetna would only allow them to present written information to the advisory panel, and would not allow them to appear personally or through counsel before the panel.

The doctors, along with TMA and HCMS, filed suit on November 24, 1993, claiming that their deselection from Aetna's PPO and the "termination without cause" provisions of their preferred provider

3

contracts violate Texas administrative regulations governing preferred provider plans.  After suit was filed, Aetna postponed the November 30 advisory panel review at the doctors' request, to allow the doctors sufficient time to prepare and participate in the review process.

On December 14, 1993, Aetna provided the doctors with additional information regarding their deselection, including the procedure for the panel review, summary matrices containing the information upon which the deselection was based, a description of the deselection criteria, and an explanation of the methodology used in making deselection decisions.  On January 12, 1994, Aetna informed the doctors that the advisory panel reviews were scheduled for January 17 or 18, 1994.  On January 17, 1994, the doctors informed Aetna that they were declining to attend the advisory panel reviews.  Aetna then informed the doctors that the advisory panel would nonetheless convene on January 18, 1994, and again invited their participation.

The January 18, 1994 advisory panel met and recommended the reinstatement of Dr. Portela and the conditional reinstatement of Dr. Benjamin, dependant upon his response to a patient complaint. The advisory panel did not recommend that Drs. Fields, Maidenberg, and Chelvam be reinstated.  Aetna accepted all of the non-binding recommendations of the advisory panel and notified the doctors of its reinstatement decisions by letter dated January 31, 1994.

B. PROCEDURE

On November 24, 1993, the appellants filed suit against the

4

three Aetna defendants in the 165th District Court of Harris County, Texas. They sought to enjoin Aetna from terminating the doctors' preferred provider contracts and sought a declaratory judgment that the "termination without cause" provisions in their contracts were void and unenforceable because these provisions violated Texas regulations governing the operation of PPOs, 28 Tex.Admin.Code § 3.3701-3.3705 (the "PPO rules"). The appellants also alleged that the doctors' terminations violated the PPO rules because they were not accompanied by reasonable due process.

On January 26, 1994, the appellants voluntarily dismissed their suit against Aetna Health Plans. Subsequently, the remaining defendants, Aetna Life Insurance and Aetna Health Management (collectively, "Aetna"), removed the case to the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1441(b), based on diversity of citizenship. On February 4, 1994, the district court denied the appellants' motion for a temporary injunction of the doctors' deselection from the PPO. Aetna then filed a motion for summary judgment. On May 31, 1994, a magistrate judge entered a memorandum opinion recommending that the district court grant the summary judgment motion, which the district court adopted. On August 18, 1994, the district court entered final judgment in favor of Aetna. TMA, HCMS, and the doctors filed a timely notice of appeal.

C. THE DISTRICT COURT'S DECISION

The district court granted summary judgment for Aetna on the ground that Texas law does not provide a private cause of action to

5

enforce the PPO rules. The district court reasoned that "if any of the provisions of 28 Tex.Admin.Code § 3.3703 is violated, 28 Tex.Admin.Code § 3.3703(4) provides that enforcement shall be pursued in accordance with Article 21.21-2 of the Texas Insurance Code." Article 21.21-2 gives the Texas Board of Insurance authority to investigate alleged violations of the Insurance Code and determine appropriate sanctions and penalties. Tex.Ins.Code Ann. art. 21.21-2 § 6 (Vernon Supp.1996). The court found that "both 28 Tex.Admin.Code § 3.3703 and Article 21.21-2 of the Insurance Code clearly indicate that the Texas Board of Insurance is the only party responsible for assuring that insurers comply with 28 Tex.Admin.Code § 3.3703." Additionally, the court rejected the argument that the doctors could pursue their claims of violations of the PPO rules under Tex.Ins.Code Ann. art. 21.21 §§ 4(7)(b) and 16, reasoning that 28 Tex.Admin.Code § 3.3703(4) explicitly sets forth the method whereby its provisions may be enforced, and that sections 4(7)(b) and 16 are not applicable to the doctors' complaints that they have been unfairly terminated under the provisions of their preferred provider contracts. The court concluded that Aetna's motion for summary judgment should be granted because Texas law provides no private cause of action for the conduct alleged by TMA, HCMS, and the doctors.

## II. STANDARD OF REVIEW

We review the grant of a summary judgment de novo, applying the same criteria used by the district court in the first instance. *Norman v. Apache Corp.,* 19 F.3d 1017, 1021 (5th Cir.1994);

6

*Conkling v. Turner,* 18 F.3d 1285, 1295 (5th Cir.1994). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Whether Texas law provides appellants with a private cause of action to enforce the PPO rules is a pure question of law, for which summary judgment is proper. *Sheline v. Dun & Bradstreet Corp.,* 948 F.2d 174, 176 (5th Cir.1991).

## III. DISCUSSION

The appellants argue that the district court erred in granting summary judgment in favor of Aetna on the ground that Texas law does not provide a private cause of action to enforce violations of the PPO rules. First, they contend that even if no private cause of action exists, the doctors are entitled to a declaratory judgment concerning their "contract rights" and related injunctive relief. Second, the appellants argue that they can challenge Aetna's alleged violations of the PPO rules under Article 21.21, § 16(a) of the Texas Insurance Code as unfair or deceptive acts or practices in the business of insurance. Third, the appellants claim that they can challenge Aetna's violations of the PPO rules under Article 21.21, § 4(7)(b) as unfair discrimination in the business of insurance.

Aetna responds that the district court properly granted summary judgment because no private cause of action by which

7

appellants can enforce alleged violations of the PPO rules exists under Texas law. Aetna argues that 28 Tex.Admin.Code § 3.3703(4) provides the exclusive enforcement mechanism for violations of the PPO rules. Aetna contends that the appellants, by characterizing their suit as a request for a declaratory judgment of their "contract rights," and by additionally arguing that the PPO rules are incorporated into their contracts as a matter of law, merely attempt to circumvent the exclusive enforcement mechanism of § 3.3703(4). Aetna also contends that the private causes of action provided by Texas Insurance Code Article 21.21, §§ 16(a) and 4(7)(b) are inapplicable to the appellants' allegations that the doctors' deselection from Aetna's PPO violates the PPO rules.[2]

A. THE PPO RULES

The Texas Department of Insurance (formerly the State Board of Insurance) promulgated administrative regulations governing the operation of preferred provider health insurance plans—the PPO rules—which are codified in the Texas Administrative Code, title 28, sections 3.3701-3.3705. *See* 11 Tex. Reg. 2810 (1986). The regulations apply to a health insurance plan in which an insurer "provides through its health insurance policy for the payment of a level of coverage which is different from the basic level of coverage provided by the health insurance policy, if the insured

---

[2]The parties raise additional arguments concerning the merits of this case—whether the doctors' deselection from Aetna's PPO and the "termination without cause" provisions of their preferred provider contracts violate the PPO rules. We do not address these arguments because we agree with the district court that Texas law provides no private cause of action to the appellants for enforcement of the PPO rules.

uses a preferred provider."  28 Tex.Admin.Code § 3.3701.  Section 3.3703 provides that a preferred provider plan shall not be considered unjust or unfair discrimination under the Texas Insurance Code if it complies with these rules.  28 Tex.Admin.Code § 3.3703.  The portion of § 3.3703 relevant to this appeal provides:

> (1) physicians ... may apply for and shall be afforded a fair, reasonable, and equivalent opportunity to become preferred providers.  Such designation shall not be unreasonably withheld.  If such designation is withheld relating to a physician, the insurer shall provide a review mechanism that incorporates an advisory role only by a physician panel of not less than three physicians ...

> (2) the terms and conditions of the contract between the insurer and the preferred providers shall be reasonable, shall not violate any law or any section of this subchapter, shall be based solely on economic, quality, and accessibility considerations, and shall be applied in accordance with reasonable business judgment....

*Id.*  In addition to the requirements of § 3.3703, § 3.3705(2) mandates that:

> Every contract by an insurer with a physician or physician group shall have a mechanism for the resolution of complaints initiated by the insured, physicians, or physician organization.  Such mechanism shall provide for reasonable due process which includes an advisory role only by a physician panel selected in the manner provided in § 3.3703(1) of this title (relating to Requirements)....

28 Tex.Admin.Code § 3.3705(2).

The appellants contend that the "termination without cause" provisions of the doctors' preferred provider contracts violate § 3.3703(2) (requiring contract terms to be based solely on economic, quality, and accessibility considerations) and § 3.3705(2) (requiring that every preferred provider contract provide for reasonable due process in connection with any complaint by the

9

physician).  Additionally, they argue that the doctors' deselection from Aetna's PPO violates § 3.3703(1) because it was not accompanied by reasonable due process.  Section 3.3703(4) controls the treatment of violations of the PPO rules.  This section provides that:

> in addition to all other contract rights, violations of these rules shall be treated for purposes of complaint and action in accordance with the Insurance Code, Article 21.21-2, and the provisions of that article shall be utilized insofar as practicable, as it relates to the power of the board [now Department], hearings, orders, enforcement, and penalties....

28 Tex.Admin.Code § 3.3703(4).  The district court concluded that § 3.3703(4) precludes the existence of a private cause of action to enforce the PPO rules by establishing that action under Texas Insurance Code Article 21.21-2 shall be the exclusive enforcement mechanism for these rules.  We agree.

Texas Insurance Code Article 21.21-2 § 6(a) authorizes the State Board of Insurance (now the Texas Department of Insurance) to ensure compliance with the Insurance Code.  Tex.Ins.Code Ann. art. 21.21-2 § 6(a) (Vernon Supp.1996).  Texas courts have repeatedly held that no private cause of action exists under article 21.21-2. *See, e.g., Allstate Ins. Co. v. Watson,* 876 S.W.2d 145, 148 (Tex.1994); *Maryland Ins. Co. v. Head Indus. Coatings & Servs., Inc.,* 906 S.W.2d 218, 225 (Tex.App.—Texarkana 1995, no writ); *Progressive County Mut. Ins. Co. v. Boman,* 780 S.W.2d 436, 437 n. 1 (Tex.App.—Texarkana 1989, no writ) (noting that "[t]he Unfair Claims Settlement Practices Act [article 21.21-2] does not purport to give individuals a private cause of action.  Rather, it authorizes the State Board of Insurance to investigate and impose

sanctions ...");  *Cantu v. Western Fire & Casualty Ins. Co.,* 716 S.W.2d 737, 741 (Tex.App.—Corpus Christi 1986), *writ ref'd. n.r.e. per curiam,* 723 S.W.2d 668 (Tex.1987).  Because § 3.3703(4) refers solely to section 21.21-2 for the manner in which the PPO rules may be enforced, the appellants may not bring a judicial action to privately enforce the PPO rules.[3]

The appellants argue that, despite the reference of § 3.3703(4) to Article 21.21-2 for enforcement of the PPO rules, they may seek a declaratory judgment of their "contract rights," and

_____

[3]Since oral argument, the Texas Department of Insurance has adopted amendments to the PPO rules supporting our conclusion that § 3.3703(4) provides that the exclusive enforcement mechanism for the PPO rules is administrative action by the Texas Department of Insurance under Tex.Ins.Code Ann. art. 21.21-2 § 6(a).  Although § 3.3703(4) itself remains unchanged, § 3.3701, defining the scope of the PPO rules, has been amended effective December 6, 1995 to include the following language:

> These sections do not create a private cause of action for damages or create a standard of care, obligation or duty that provides a basis for a private cause of action.  These sections do not abrogate a statutory or common law cause of action, administrative remedy or defense otherwise available....

20 Tex.Reg. 9853, 9862 (1995).  Of course, in deciding this case, we consider the regulations in effect at the time of the doctors' deselection from Aetna's PPO.  However, these amendments are relevant because, in its comments on the amendments to section 3.3701, the Texas Department of Insurance stated that:

> Agency Response:  This language *does not change any existing law* but only emphasizes that these rules are administrative rules.  Violation subjects the violator to administrative action by the commissioner but does not affect private causes of action.  In other words, these rules cannot form the basis of a private lawsuit, nor can they diminish other rights of action or defenses....

20 Tex.Reg. 9853, 9854 (1995).

pursue relief through the private causes of action available under Texas Insurance Code Article 21.21 §§ 16(a) and 4(7)(b).

## B. DECLARATORY JUDGMENT

The appellants argue that, even if no private cause of action exists, they are entitled to a declaratory judgment regarding their "contract rights," relying on the introductory language in 28 Tex.Admin.Code § 3.3703(4) ("in addition to all other contract rights") and the Texas Uniform Declaratory Judgment Act, Tex.Civ.Prac. & Rem.Code Ann §§ 37.001-37.011 (Vernon 1986). They seek a declaration that the "termination without cause" provisions of the doctors' preferred provider contracts are unenforceable in light of 28 Tex.Admin.Code § 3.3703(2) (requiring contract terms to be based solely on economic, quality, and accessibility considerations) and § 3.3705(2) (requiring that every preferred provider contract provide for reasonable due process in connection with any complaint by the physician). Additionally, they argue that the PPO rules form a part of the doctors' preferred provider contracts as a matter of law, and therefore their deselection from Aetna's PPO violated their "contract rights" because the deselection violated 28 Tex.Admin.Code §§ 3.3703 and 3.3705.

Although appellants claim to desire a declaration of their contract rights, in actuality, they are requesting the court to apply the requirements of the PPO rules to invalidate their deselection from Aetna's PPO. They characterize their claim as a private contract dispute; however, they do not allege a breach of contract, nor do they seek an interpretation of unclear contractual

12

provisions. Rather they seek a declaration that a provision of their contract is unenforceable because it is prohibited by the PPO rules and further that the requirements of the PPO rules are incorporated into their contracts as a matter of law. Additionally, the appellants claim that they are entitled to "related injunctive relief." Therefore, they seek to directly enforce compliance with the PPO rules.

Violations of the PPO rules, by their own terms, must be treated for complaint and action in accordance with Article 21.21-2 of the Texas Insurance Code; the appellants cannot maintain a declaratory judgment action which would in effect require this court to enforce the PPO rules. *See Cowan Boat Transfer, Inc. v. Texas Employment Comm'n,* 789 S.W.2d 405, 407 (Tex.App.—Austin 1990, writ dism'd by agr.) (holding that where the legislature has provided an exclusive remedy for an alleged wrong, the right to maintain a declaratory judgment action is barred); *see also Alamo Express, Inc. v. Union City Transfer,* 158 Tex. 234, 309 S.W.2d 815, 827 (1958). Appellants cannot circumvent the procedure provided by § 3.3703(4) by characterizing their request for enforcement of the PPO rules as a request for a declaration of their contract rights and "related injunctive relief." Therefore, we hold that the Texas Uniform Declaratory Judgment Act does not provide the appellants with a cause of action by which to enforce violations of or ensure compliance with the PPO rules.

C. ARTICLE 21.21, SECTION 16(A)

Appellants additionally argue that, despite the language of

13

§ 3.3703(4), enforcement by the Texas Department of Insurance under Article 21.21-2 is not the exclusive remedy for enforcement of the PPO rules. Appellants contend that, because the PPO rules were promulgated under Article 21.21 of the Texas Insurance Code, as well as Article 21.21-2, they can pursue a remedy for violation of the PPO rules through Article 21.21, § 16(a).

Section 16(a) provides:

> Any person who has sustained actual damages as a result of another engaging in an act or practice declared in section 4 of this Article or in rules or regulations lawfully adopted by the Board [now Texas Department of Insurance] under this article to be unfair methods of competition or unfair or deceptive acts or practices in the business of insurance ... may maintain an action against the person or persons engaging in such acts or practices.

Tex.Ins.Code Ann. art. 21.21 § 16(a) (Vernon Supp.1995).[4] Appellants argue that because the doctors have sustained actual damage as a result of Aetna's deselection in violation of the PPO rules, they are entitled to pursue injunctive and "other relief" under Tex.Ins.Code Ann. art. 21.21 § 16(b) (Vernon Supp.1996).

Aetna responds that appellants have no private cause of action under Article 21.21 § 16(a) as a matter of law because (1) Texas law does not declare a violation of the PPO rules to constitute an unfair method of competition or an unfair or deceptive act or practice, (2) the doctors are not "persons" for purposes of Article

---

[4]This section has recently been amended by Acts 1995, 74th Leg., Ch. 414, § 13, effective September 1, 1995. *See* Tex.Ins.Code Ann. art. 21.21 § 16(a) (Vernon Supp.1996). The amended § 16(a) no longer provides a private cause of action to a person injured by an act or practice declared to be an unfair method of competition or an unfair or deceptive trade or practice in rules or regulations adopted by the Texas Department of Insurance. *Id.*

21.21 § 16(a), and (3) the doctors have not suffered any actual damages as a result of any conduct prohibited by Article 21.21 § 16(a).

Although the language of § 16(a) provides a cause of action to "any person," the right to sue under § 16(a) has been limited by Texas courts to persons in privity of contract with the insurer on an insurance policy or an intended beneficiary of an insurance policy. *In re Burzynski,* 989 F.2d 733, 740 (5th Cir.1993); *Shelton Ins. Agency v. St. Paul Mercury Ins. Co.,* 848 S.W.2d 739, 744 (Tex.App.—Corpus Christi 1993, writ denied) (stating that "no authority exists to extend the meaning of the term "person,' as found in art. 21.21, beyond one who was either an insured or an intended beneficiary of the policy"); *CNA Ins. Co. v. Scheffey,* 828 S.W.2d 785, 791 (Tex.App.—Texarkana 1992, writ denied); *Chaffin v. Transamerica Ins. Co.,* 731 S.W.2d 728, 731 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). The doctors are neither in privity of contract with Aetna *on an insurance policy* nor intended beneficiaries of an insurance policy. Therefore, the appellants cannot maintain a suit under Tex.Ins.Code Ann. art. 21.21 § 16(a). Because we determine that the doctors are not "persons" within the meaning of § 16(a), we do not address Aetna's additional arguments that violations of the PPO rules are not declared to be unfair methods of competition or unfair or deceptive acts or practices and that the doctors have not suffered any actual damages.

D. ARTICLE 21.21, SECTION 4(7)(B)

Finally, appellants argue that, despite § 3.3703(4), they can pursue a private cause of action for violations of the PPO rules under former Texas Insurance Code Article 21.21 § 4(7)(b) (Vernon Supp.1995).[5] Former Texas Insurance Code Article 21.21 section 4(7)(b) prohibits unfair discrimination in the business of insurance. Tex.Ins.Code Ann. art. 21.21 § 4(7)(b) (Vernon Supp.1995). Unfair discrimination is defined as:

> Making or permitting any unfair discrimination between individuals of the same class and of essentially the same hazard in the amount of premium, policy fees, or rates charged for any policy or contract of accident or health insurance or in the benefits payable thereunder, or in any of the terms or conditions of such contract, or in any other manner whatever.

*Id.* The district court held that "there is no indication that section 4(7)(b) is in any way implicated by Plaintiffs' allegations" because the "Plaintiffs claim that they have been unfairly terminated under the provisions of their preferred provider contracts, not that they have been unfairly discriminated against in terms of policy premiums, rates or fees." We agree.

On appeal, the doctors argue for the first time that their deselection resulted in unfair discrimination to their patients, who are Aetna policyholders, and that the doctors suffered actual damage because of this unfair discrimination against their patients. Ordinarily, we do not address arguments that were not presented to the district court. *See E.E.O.C. v. Clear Lake Dodge,* 25 F.3d 265, 270 n. 3 (5th Cir.1994). Even had the doctors raised this argument before the district court, they could not maintain an

---

[5]Texas Insurance Code § 4(7)(b) has recently been deleted. *See* Acts 1995, 74th Leg., ch. 414 § 11, eff. Sept. 1, 1995.

action against Aetna under § 4(7)(b). A violation of Article 21.21 § 4(7)(b) is an unfair practice that is actionable through Article 21.21 § 16(a), which provides a private cause of action to "any person who has sustained actual damages as a result" of an insurer's unfair method of competition or unfair or deceptive act or practice. *See* Tex.Ins.Code Ann. art. 21.21 § 4 (defining the actions described in the subsections as "unfair methods of competition and unfair and deceptive acts or practices in the business of insurance"); § 16(a) (Vernon Supp.1995). We have already decided that the doctors are not "persons" within the meaning of § 16(a). *See Burzynski,* 989 F.2d at 740. Therefore, appellants may not bring a private cause of action to enforce the PPO rules under former Article 21.21 § 4(7)(b). Accordingly, we conclude that the district court properly granted summary judgment to Aetna on the grounds that Texas law does not provide a private cause of action for enforcement of the PPO rules.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's summary judgment in favor of Aetna.

17